```
UNITED STATES DISTRICT COURT
  NORTHERN DISTRICT OF INDIANA
       HAMMOND DIVISION
```

PAUL VERCEL,                        )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )    Cause No.: 2:08-CV-248 JVB
                                    )
CYNTHIA LIGON-HANES,                )
R. FAVELA, and the CITY             )
OF EAST CHICAGO, INDIANA,           )
                                    )
        Defendants.                 )

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment filed by Defendants Haynes, Favela, and the City of East Chicago [DE 18]. For the reasons discussed below, Defendants' Motion for Summary judgment is GRANTED in part and DENIED in part. Summary judgment is denied as to Plaintiff Paul Vercel's claim of false arrest against Defendant Favela in his personal capacity and summary judgment is granted as to all of Plaintiff's other claims.

**A.      Standard of Review**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, the burden of showing that an issue of material fact exists thereby shifts to the non-moving party. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts *that might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B.     Background and Facts**

Defendants Cynthia Ligon-Haynes[1] and R. Favela are police officers employed by Defendant City of East Chicago ("the City").  Plaintiff filed his Complaint against the two, along with the City itself, alleging that Defendants are liable to him for violating his Second, Fourth, Fifth, and Fourteenth Amendment rights, and for intentional infliction of emotional distress and invasion of privacy.  Plaintiff alleges that Haynes, Favela and the City "engaged in a series of retaliatory acts" against him after he filed a citizen's complaint against Haynes.

Plaintiff has an ongoing dispute with his neighbor.[2] On April 23, 2004, Plaintiff entered the East Chicago Police Department ("ECPD") to file a citizen's complaint against his neighbor. Haynes, who at that time was a detective with the ECPD, assisted him with registering his complaint. Apparently, Plaintiff was dissatisfied with Haynes's assistance, and filed a citizen's complaint against her on April 30, 2004. Plaintiff's complaint against Haynes alleged that she was rude, disrespectful, and was not doing her job. Haynes maintains that she did not know about Plaintiff's complaint against her until the initiation of this lawsuit.

About a year and a half later, September 23, 2005, Plaintiff went to the home of a friend where he drank one beer. After he left his friend's home, he went to Am-Vets, where he drank two beers and one and one-half ounces of whiskey. Plaintiff maintains that he was kicked in the back of the leg by an unknown assailant as he was leaving Am-Vets. After he was kicked in the

---

[1]Defendant Ligon-Hanes is referred to throughout Defendants' briefs as "Haynes" rather than "Hanes," as stated in the Complaint. In her deposition, she stated that her married name is "Haynes," which is how the Court will refer to her throughout the Opinion and Order. *See* DE 29-4 at 3.

[2]Plaintiff stated that he has filed between six and eight police reports against his neighbors and there are "maybe 8 to 12 printouts that [the East Chicago Police Department] get[s] when somebody calls in and they put it into their computer." (DE 18-6 at 11).

leg, Plaintiff went home and ate dinner, and then drove himself to the hospital to seek treatment for his leg.

That same night, Haynes was working a shift with the ECPD patrol division. Haynes was made aware that a man, later identified as Plaintiff, was pushing on locked doors, walking unsteadily, and driving over the speed limit in the hospital parking lot. Haynes and another police officer observed Plaintiff on the hospital security camera running through two stop signs without stopping and driving, twice, the wrong way on a one-way street. Haynes and the other police officer conducted a traffic stop on Plaintiff. Haynes smelled alcohol on him, noticed that his balance was unsteady, and observed that his eyes were bloodshot and his skin was pale. After escorting Plaintiff to the hospital for treatment, Haynes arrested him. Plaintiff alleges that his arrest by Haynes was in retaliation for his citizen's complaint against her.

Nearly two years later, in July 2007, Plaintiff called the ECPD to report a dispute with his neighbors. Two ECPD officers, Officer Cardova and Defendant Favela, responded to the call. The officers spoke with both Plaintiff and the neighbors. According to Favela, Plaintiff became "loud and boisterous" during this time, and "continued to yell and scream despite being asked to calm down and lower his voice." (DE 18-12 at 2). Favela arrested Plaintiff for disorderly conduct and, because Plaintiff allegedly pulled away from Favela and locked his joints, for resisting law enforcement.

Plaintiff, on the other hand, has a different version of the event. He states that he was talking with Favela and Officer Cardova when Favela began giving him dirty looks and started using an aggressive tone with him. Plaintiff alleges that he looked at Favela's name tag, and Favela said, "You know what, I see you looking at my name. You're not going to F with me. You're under arrest." (DE 29-10 at 7). Sometime afterwards, Plaintiff entered into a plea

4

agreement which deferred the disorderly conduct charge and dismissed the resisting law enforcement charge.

Plaintiff alleges that this arrest was retaliatory for his political views and was a result of racial discrimination. Plaintiff alleges that he was arrested because he publicly opposed the mayor's re-election and because the mayor's administration "eliminated white people out of the administration and their positions in the city." (DE 18-7 at 8–9).

During Plaintiff's 2007 arrest, Favela removed a firearm from Plaintiff's possession. Plaintiff had a valid Indiana Handgun License for the gun. The gun was placed in the custody of the ECPD. Shortly after the ECPD took the firearm, Plaintiff requested the firearm be returned. Defendants state that the ECPD became aware of Plaintiff's request for his firearm to be returned after the initiation of this lawsuit, and it was test-fired by the Lake County Sheriff's Office and returned to Plaintiff in February 2009.

Additionally, after Plaintiff's July 2007 arrest, Haynes, who was then Chief of Patrol, reviewed Favela's arrest report for the incident. Haynes was aware of the ongoing dispute between Plaintiff and his neighbors and was concerned by the possibility of a violent altercation if Plaintiff continued to possess his firearm. Haynes contacted the Indiana State Police Department to request the suspension of Plaintiff's Indiana Handgun license, and the request was granted. Plaintiff contends that Haynes's actions were in retaliation for the citizen's complaint he made against her in 2004. Plaintiff's license was reinstated by the Indiana State Police in November 2007.

Plaintiff claims that the actions of Haynes and Favela violated his Second, Fourth, Fifth, and Fourteenth Amendment rights. He seeks compensatory and punitive damages, as well as attorney's fees, from all Defendants.

**C.     Analysis**

While Plaintiff's Complaint is not explicitly clear on what claims he is asserting, the Court interprets Plaintiff's Complaint as asserting the following claims against Defendants: (1) federal and state claims against Haynes alleging malicious prosecution following the 2005 arrest; (2) federal and state claims against Favela alleging false arrest in 2007 and claims against Favela and Haynes alleging malicious prosecution following the arrest; and (3) state claims against Favela and Haynes for invasion of privacy and intentional infliction of emotional distress ("IIED").[3] Plaintiff also believes that the City is liable for the Favela's and Haynes's conduct.

**(1)     Claims Relating to Plaintiff's 2005 Arrest**

Plaintiff has asserted state and federal malicious prosecution claims against Haynes arising out of his 2005 arrest. Plaintiff's state law malicious prosecution claim is barred by the Indiana Tort Claims Act. The Indiana Tort Claims Act provides that governmental employees acting within the scope of their employment are not liable for a loss that results from "[t]he initiation of a judicial or an administrative proceeding." Ind. Code § 34-13-3-3(6); *see Butt v. McEvoy*, 669 N.E.2d 1015 (Ind. Ct. App. 1996) (holding that the ITCA confers immunity upon police officers in actions for malicious prosecution). For this reason, summary judgment is GRANTED in favor of Haynes on Plaintiff's state law claim of malicious prosecution for his 2005 arrest.

---

[3]     Plaintiff's Complaint does not set forth his various claims as individual "counts" (not that he is required to do so). However, he does use the phrases "invasion of privacy" and "intentional infliction of emotional distress" in paragraph 19 of his Complaint and says that he suffered these injuries "as a direct result of his false arrest and imprisonment on July 22, 2007." (DE 1 at 5).

Plaintiff also attempts to bring this same malicious prosecution claim as a federal claim under § 1983. The Court of Appeals for the Seventh Circuit has explained that "a malicious prosecution claim against police officers is an anomaly" since the role of police officers is "effectuating and maintaining a seizure, not . . . initiating and pursuing a criminal prosecution." *Washington v. Summerville*, 127 F.3d 552, 559–60 (7th Cir. 1997) (citing *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring)). When a plaintiff alleges there was no probable cause for him to be arrested or prosecuted, his claim against the arresting officer would be one for false arrest, not malicious prosecution. *Id*. Furthermore, a plaintiff cannot "refashion[] his false arrest . . . claim under the guise of a malicious prosecution claim." *Id*.

The Court of Appeals for the Seventh Circuit has clarified this issue even further, stating that "'there is no constitutional right not to be prosecuted without probable cause' and a plaintiff cannot 'state a section 1983 claim simply by showing that he was wrongly prosecuted.'" *Freeman v. Guy*, 303 Fed. Appx. 358, 362 (7th Cir. 2008) (unpublished) (quoting *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 683 (7th Cir. 2007)); *see Bielanski v. County of Kane*, 550 F.3d 632, 638 (7th Cir. 2008) (acknowledging its "well-settled rule" that "the interest in not being prosecuted groundlessly is not an interest that the Fourth Amendment protects") (citations omitted). Instead, "a plaintiff 'must establish that he was deprived of a specific constitutional right, such as the right to a fair trial.'" *Freeman*, 303 Fed. Appx. at 362 (quoting *Holmes*, 511 F.3d at 683); *Penn v. Harris*, 296 F.3d 573, 576 (7th Cir. 2002) ("A plaintiff therefore may not state a § 1983 claim simply by alleging that he was maliciously prosecuted. Instead, he must allege the violation of one of his constitutional rights."); *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) (stating that claims of malicious prosecution should be analyzed "under the language of the Constitution itself").

Plaintiff fails to establish that he was deprived of a specific constitutional right. Instead, Plaintiff claims that Haynes had no probable cause to arrest him in the first place and that she submitted a probable cause affidavit after the arrest that was full of lies. Once the prosecutor received and reviewed the affidavit, criminal charges were brought against Plaintiff. Thus, Plaintiff is attempting to do exactly what the plaintiff in *Washington* did, and which the Seventh Circuit rejected: incorrectly, whether intentionally or not, naming a false arrest claim as a malicious prosecution claim. Furthermore, Plaintiff asserts his malicious prosecution claim against Haynes, the arresting officer, rather than the prosecutor who actually initiated the criminal proceedings against him. For these reasons, summary judgment is GRANTED in favor of Haynes on Plaintiff's federal claim for malicious prosecution arising out of his arrest in September 2005.

**(2) Claims Relating to Plaintiff's 2007 Arrest**

Plaintiff brings both a state law and a federal law claim of malicious prosecution for the events surrounding his 2007 arrest. He adds a Fourth Amendment claim for false arrest, alleging that Favela lacked probable cause to arrest him on that date and, just like the incident in 2005, did so out of animosity and for purposes of retaliation. These malicious prosecution claims fail for the same reasons Plaintiff's 2005 claims failed. Also, Plaintiff has abandoned them by not presenting evidence or argument for their support. Accordingly, summary judgment is GRANTED in favor of Favela and Haynes as to Plaintiff's malicious prosecution claims relating to his 2007 arrest.

However, as to Plaintiff's false arrest claim, Plaintiff has raised a genuine issue of material fact, warranting a trial. In *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007), the

Court of Appeals for the Seventh Circuit held that "[a] finding of probable cause absolutely bars a claim for false arrest under § 1983." The court further explained that "[p]robable cause to arrest existed if, at the time the decision was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense.'" *Id*. (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Favela and Plaintiff have two different versions about the events leading up to his arrest. The Court finds that there are genuine issues of material fact relating to Plaintiff's false arrest claim in relation to his July 2007 arrest, and summary judgment is denied as to this claim. Fed. R. Civ. P. 56(c).

**(3)    Claims Relating to the Suspension of Plaintiff's Handgun License and Seizure of his *Handgun***

Plaintiff's last claim against the officers pertains to the suspension of his Indiana handgun license and the alleged wrongful seizure and retention of his handgun. In his Complaint, Plaintiff alleges that "[Haynes] and Favela maliciously initiated a judicial proceeding against [Plaintiff] in the Firearms Licensing Section of the Indiana State Police. [Haynes] and Favela falsely represented to the Superintendent of State Police that [Plaintiff] was not a proper person to retain a license to carry a handgun." (DE 1 at 3). Plaintiff claims that these actions constituted violations of his Second and Fourteenth Amendment rights.

Plaintiff's claim against the officers cannot go forward for the fundamental reason that the suspension of his firearm license, as well as the subsequent reinstatement of that license, was the province of an administrative proceeding initiated and conducted by the Indiana State Police, not by the officers. The Indiana State Police is not a defendant in this case. Summary judgment is

9

GRANTED in favor of Favela and Haynes on Plaintiff's claims pertaining to the seizure of his handgun and the temporary suspension of his Indiana handgun license.

**(4)     Plaintiff's Claims Against the City**

In his Complaint, Plaintiff makes only vague assertions against the City. He states that the City, along with Haynes and Favela, "engaged in a series of retaliatory acts" against him. (DE 1 at 2). He also asserts that the City refused to return his handgun in violation of his Constitutional rights. Finally, he alleges that the criminal proceedings against him relating to his arrests in 2005 and 2007, as well as the administrative proceeding relating to his handgun license, "were malicious prosecution by [Haynes], Favela, and the City of East Chicago." (DE 1 at 4).

No municipal liability can be found where individual defendants are exonerated from their alleged wrongdoings. But even if a tort had been committed, a city may not be liable under § 1983 solely because it employs a tortfeasor. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978). Moreover, Cities are only liable when a constitutional violation is caused by municipality policy or custom. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell*, 436 U.S. at 694). There are three ways to show the existence of a municipality policy or custom:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a practice so widespread that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of the law; and (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."

*Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003).

Plaintiff has utterly failed to show that his only surviving claim—the allegedly false arrest in 2007—was caused by the City's policy or custom. Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, when considering a motion for summary judgment, "the district court is not required to scour every inch of the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003)). Therefore, the Motion for Summary Judgment is GRANTED in favor of the City and against Plaintiff on all of his claims.

**(5)    Plaintiff's Claims of Invasion of Privacy and IIED**

Defendants move for summary judgment on Plaintiff's claims for invasion of privacy and IIED. Plaintiff does not present evidence or argument with respect to these two state law claims in his response. Accordingly, summary judgment is GRANTED in favor of Defendants on Plaintiff's claims for invasion of privacy and intentional infliction of emotional distress. *See Hemsworth*, 476 F.3d at 490.

**D.    Conclusion**

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Summary judgment is denied as to Plaintiff's claim of

false arrest against Defendant Favela, and summary judgment is granted as to all of Plaintiff's other claims against all Defendants.

SO ORDERED March 31, 2010.

                                                    s/ Joseph S. Van Bokkelen
                                                   JOSEPH S. VAN BOKKELEN
                                                   UNITED STATES DISTRICT JUDGE